# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| JUDITH T. SKACH, | ) |
| Plaintiff, | ) |
| vs. | ) 3:12-cv-00464-RCJ-VPC |
| AAA NORTHERN CALIFORNIA, NEVADA & UTAH INSURANCE EXCHANGE, | ) **ORDER** |
| Defendant. | ) |

This is a first-party insurance action arising out of an automobile accident. Before the Court are four motions for summary judgment and a motion for an adverse inference instruction. The Court denies the motions, except as delineated herein.

## I.   FACTS AND PROCEDURAL HISTORY

On or about September 16, 2010, Plaintiff Judith Skach was involved in a car accident caused by a non-party who was found to be at fault. (Am. Compl. ¶ 5, Aug. 29, 2012, ECF No. 1, at 6). Plaintiff sustained permanent injuries; her medical expenses exceed $27,000, and treatment is ongoing. (*Id.*). The non-party tortfeasor's insurance company tendered the policy limits of $50,000. (*Id.*). Plaintiff, believing that her eventual expenses would exceed $50,000, tendered a claim for an unspecified amount of Underinsured Motorist ("UIM") benefits to Defendant AAA Northern California, Nevada & Utah Insurance Exchange ("AAA") under a policy she had with AAA. (*See id.* ¶¶ 4–5). Defendant rejected the claim. (*Id.* ¶ 7).

Plaintiff sued Defendant in state court on three causes of action: (1) breach of contract;

(2) insurance bad faith; and (3) violations of Chapter 686A of the Nevada Revised Statutes ("NRS") and Chapter 686A of the Nevada Administrative Code ("NAC"). Defendant removed the Amended Complaint ("AC"). The Court denied summary judgment to Defendant as to the bad faith claim but dismissed the claim, with leave to amend. The Court noted that under Nevada law, Plaintiff would have to prove fault by the tortfeasor in order to recover upon her breach of bad faith claims based upon her UIM policy. Upon amendment, Defendant moved to dismiss because Plaintiff had not included any claim for declaratory judgment as to the issue of the tortfeasor's fault. The Court refused to dismiss but noted that Plaintiff would indeed have to prove the tortfeasor's fault as part of the breach and bad faith claims. Defendant has now filed for motions for summary judgment and a motion for an adverse inference instruction.

## II.  LEGAL STANDARDS

### A.  Summary Judgment

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In determining summary judgment, a court uses a burden-shifting scheme:

> When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden

of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

///

///

B.    **Adverse Inference Instructions**

> "If a party or a party"s officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
>
> > (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims . . . .

Fed. R. Civ. P. 37(b)(2)(A), (A)(1). Rule 37 thus governs the common law "adverse inference rule."

III.   **ANALYSIS**

A.    **Summary Judgment Motions**

1.    **Motions No. 50, 53, and 54**

Defendant asks the Court to grant it summary judgment as against Plaintiff's bad faith and statutory claims and also as to her prayer for punitive damages. The motions are largely redundant, focusing on the argument that a reasonable disagreement over the value of Plaintiff's claims precludes recovery on the tort claims.[1] Punitive damages are not available on the breach of contract claim, but only potentially on the insurance bad faith and Unfair Claims Practices Act ("UCPA") claims. *See* Nev. Rev. Stat. § 42.005(1). Defendant argues that Plaintiff has produced no evidence of bad faith or that Defendant "has been guilty of oppression, fraud or malice, express or implied," as required under the statute. *Id.*

The Court denies the motions. Plaintiff attaches a transcript of the deposition testimony of Mr. Thomas Carter, an expert witness as to insurance claims practices who owns Carter, Yarborough Associates. (*See* Carter Dep. 22, Oct. 24, 2013, ECF No. 68-1). He consults on ten to fifteen bad faith cases per year. (*See id.* 28). Carter first testified that in cases like the present

---

[1] As Plaintiff has noted, Defendant's filing of multiple partially redundant summary judgment motions is a transparent attempt to evade the page limitations.

1  one, where the at-fault driver was drunk, juries tend to award higher damage amounts, including
2  punitive damages. (*See id.* 14–16).  However, even assuming Mr. Carter's past experience would
3  be relevant and otherwise admissible as to a putative claim by Plaintiff against the tortfeasor in
4  the present case—and it probably wouldn't be—the malicious or oppressive behavior of the
5  tortfeasor in injuring Plaintiff is totally irrelevant to whether the tort victim's insurance company
6  itself acted maliciously or oppressively as to (non)payment of the tort victim's insurance claims.
7  After discussing the fact that the tortfeasor's insurance carrier (State Farm) had indicated to
8  Defendant in this case that there was not likely any UIM exposure, i.e., that the tortfeasor's
9  liability coverage was expected to cover all of Plaintiff's injuries, Carter testified that there was
10 no basis to find that Defendant acted in bad faith based upon its alleged failure to investigate the
11 UIM claim before Plaintiff's counsel made a UIM demand. (*See id.* 42–44).  Carter testified that
12 Plaintiff's counsel never provided Defendant in his demand letter or his follow-up letter with
13 dollar amounts for future medical damages or pain and suffering, except for the total demand of
14 $210,000, but that he demanded an explanation for Defendant's refusal to compensate the total
15 amount. (*See id.* 45–47).  There was no letter from any doctor with estimations of future medical
16 care. (*See id.* 47–48).  He testified that independent medical examinations ("IME") are usually
17 appropriate for an insurer to request even where the fact of harm is not disputed, because an IME
18 is helpful in calculating the expected cost of future medical harms, but that in some cases a
19 demand for an IME could indicate foot-dragging by an insurer. (*See id.* 48–50 ("If the injury that
20 they accept has a future component to it then an IME might be useful in determining the extent
21 and/or the cost of that future component.").  He opined that an IME would be appropriate in the
22 present case because of the indication of uncertain future harms. (*See id.* 50–51).  Carter then
23 testified that in his opinion certain questions asked of the doctors by Defendant in the present
24 case indicated bad faith. (*See id.* 51).  In particular, he opined that Defendant's questions to three
25 of Plaintiff's doctors about "malingering" and "gain" by the Plaintiff were "unusual" based upon

the 2000–3000 cases he had examined in his career. (*See id.* 51–52). He indicated that questions concerning malingering would perhaps be appropriate if a doctor had indicated such suspicions in a report that the insurer had read, but that was not the case here. (*See id.* 52). Carter explained that he viewed bad faith as "a wall built out of bricks." (*See id.* 53). If there were enough "bricks," there was bad faith, and although he could not definitively say whether there was bad faith in the present case, there was "a brick or two in this case" based upon his expertise. (*See id.* 53–54). Another "brick" was Defendant's characterization of Plaintiff's injuries as "soft tissue" injuries. (*See id.* at 63).

      This is enough to preclude summary judgment on the bad faith issue. Plaintiff need not prove the ultimate issue by clear and convincing evidence until trial. If it is true that Plaintiff refused to provide to Defendant any medical opinion as to the cost of her future medical bills, she probably will not be able to prevail on the issue at trial, but she has satisfied her burden of production on summary judgment, even assuming the burden has shifted to her. Defendant is correct that because non-economic damages have no objective measure, Defendant in most cases cannot be liable for bad faith purely due to failing to pay these alleged damages. However, in a case where it should be clear to an insurer that the covered incident resulted in *some* pain and suffering, an offer of $0 could result in a finding of bad faith. Defendant argues that Plaintiff had already received over $32,000 for her pain and suffering when Defendant refused to pay more, and that this amount, although a jury might eventually award more under the breach of contract claim, is not so low as to implicate a bad faith claim. But this figure was apparently calculated by subtracting Plaintiff's past bills from her total recovery under both the tortfeasor's liability policy and Defendant's UIM policy. If Plaintiff's future medical bills should have been expected to equal or exceed this surplus, however, the refusal to offer anything in addition for pain and suffering may have been tantamount to a refusal to acknowledge any pain and suffering resulted from the incident at all, which could constitute bad faith if Plaintiff indeed provided evidence

that some pain and suffering had resulted. The Court will therefore not grant summary judgment against the bad faith claim or strike the prayer for punitive damages based thereupon based upon the "value dispute" over Plaintiff's pain and suffering under the circumstances of this case.[2]

As to Defendant's argument that Plaintiff must prove the fault of the tortfeasor to maintain a bad faith claim against Defendant, the Court has already adjudicated this issue in Defendant's favor, but Plaintiff need not prove this fact until trial. There is easily enough evidence in this case to deny summary judgment on the issue, as Plaintiff has noted that "legal entitlement" can be shown by receiving a settlement from the tortfeasor's insurer, which appears to be undisputed here. *See Pemberton v. Farmers Ins. Exch.*, 858 P.2d 380, 384 (Nev. 1993) (citing *Allstate Ins. Co. v. Pietrosh*, 454 P.2d 106, 108 (Nev. 1969)). She will also prove the extent of her damages at trial. And, as noted in a previous order, Nevada does not follow the directed verdict rule.

Next, Plaintiff's alleged failure to cooperate sufficiently with Defendant's investigation by failing to provide timely, relevant information is a question of fact for the jury under the bad faith standard. As noted, *supra*, Plaintiff has provided enough evidence via Mr. Carter's deposition testimony for a reasonable jury to find bad faith.

As to the UCPA claim, material issues of fact concerning whether Defendant failed to effectuate a prompt and equitable settlement of future medical and pain and suffering damages after it became reasonably clear that some amount was due in this regard, and that Plaintiff was required to file the present action to recover. However, the Court will indeed limit the claims to subsections 686A.310(e), (f), and (n) of the statute, as these are the only claims identified in

---

[2] The California case of *Wilson v. 21st Century Ins. Co.*, 171 P.3d 1082 (Cal. 2007) supports Plaintiff's position as to future medical damages, but not as to non-economic damages. That case concerned an unreasonable denial of causation of an injury itself and the resulting delay in approval of payment for surgery. *See id.* at 1087. The case did not address the core issue here: whether and when an insurer can be held liable for bad faith for failing to pay an insured's claim for non-economic damages.

Plaintiff's response to the relevant interrogatory. The Court denies the motion as to these subsections however. As to subsections (e) and (n), the Court has nothing to add to its bad-faith analysis, *supra*. The Court will more closely address Defendant's argument under subsection (f). Defendant correctly notes that a statutory violation occurs under this subsection when an insured is forced to litigate a claim and ultimately recovers substantially more than the insurer offered before litigation. Defendant then argues that because Plaintiff has not yet recovered, she cannot maintain the subsection (f) claim, because it cannot be known whether she will ultimately recover substantially more than Defendant offered. The Court rejects this argument for the same reason it rejected an identical argument in the present case in the context of the Nevada common law rule that bad faith claims do not ripen until breach is adjudicated:

> Under Rule 14, for example, a federal court may entertain third-party claims "prematurely" so long as: (1) any resulting judgment is made contingent on the relevant precondition; or (2) the court directly stays any judgment until the condition is satisfied. *See Andrulonis v. United States*, 26 F.3d 1224, 1233–34 (2d Cir. 1994) (holding that the "may be liable" language of Rule 14(a) explicitly permits contribution or indemnity claims in federal court as a procedural matter even before discharge of liability, despite state law to the contrary). Rule 14 governs the joinder of third parties—a procedural circumstance not present here—but Rule 18, which applies to the joinder of multiple claims against a single party, explicitly takes the same approach the Andrulonis court took with respect to Rule 14. *See* Fed. R. Civ. P. 18(b) ("A party may join two claims even though one of them is contingent on the disposition of the other . . . .").

*Skach v. AAA N. Cal., Nev. & Utah Ins. Exch.*, No. 3:12-cv-464, 2013 WL 1104744, at *4 (D. Nev. Mar. 7, 2013). The Court can easily craft the jury instructions and verdict form to make the section 686A.310(f) claim dependent upon the breach claim in a way faithful to the statute.

   **2.   Motion No. 52**

Defendant seeks summary judgment against any claims for damages beyond the policy limits for medical care, i.e., consequential or incidental damages, non-economic damages, and fees and costs. Defendant bases the motion upon Plaintiff's alleged failure to provide any such computations of damages as required by Rule 26. As Defendant notes, the rule requires

automatic initial disclosure of, *inter alia*:

> a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.

Rule 26(a)(1)(A)(iii). Such disclosures must be supplemented if the initial disclosure becomes or is discovered to have been "incomplete or incorrect" and if the corrective information has not been otherwise provided to the other parties during discovery. Fed. R. Civ. P. 26(e)(1)(A).

Defendant argues that Plaintiff has never disclosed any computation of attorney's fees, costs, or any other consequential damages resulting from Defendant's allege bad faith. Defendant attaches a copy of Plaintiff's responses to Defendant's Requests for Production ("RFP"). (*See* Resp. to RFP, Feb. 5, 2013, ECF No. 52-2). The third RFP asked for "documents evidencing all costs allegedly incurred as a result of the incident . . . including . . . receipts, bills, invoices or other evidence . . . ." (*See id.* 2). Plaintiff responded that she did not know or recall each and every expense and "does not know what future costs or expenditures she may incur." (*See id.*). However, Plaintiff alleged to have previously provided such information and promised to supplement that information. (*See id.*). The demand letter from Plaintiff's attorney to Defendant, also attached, and which is presumably the prior disclosure to which Plaintiff referred in her answer to the third RFP, provides a calculation of past medical expenses ($27,406.50) and past lost wages ($1056), as well as a settlement offer of $150,000 unaccompanied by any other calculations. (*See* Demand Letter, May 4, 2012, ECF No. 52-3). Plaintiff's response to Defendant's second set of interrogatories includes no further calculations. (*See* Resp., Nov. 15, 2013, ECF No. 52-4). Plaintiff was herself unable to explain the basis for the demand of $150,000 or that she had any consequential damages resulting from Defendant's failure to pay $150,000. (*See* Skach Dep. 169–72, Dec. 14, 2012, ECF No. 52-1).

Plaintiff's response is mostly unresponsive to the Rule 26(a) issue, consisting mainly of a

reiteration of the response to the previous motion, focusing on the *Wilson* case.  On page ten of the response, Plaintiff correctly notes that non-economic damages are not susceptible to precise damages calculations under Rule 26(a).  This fact cuts both ways: (1) it protects defendants from bad faith claims predicated upon a failure to pay non-economic damages under a policy so long as some non-negligible amount is paid in cases where some non-economic damages are apparent, *see supra*; and (2) it protects plaintiffs from Rule 26(a) claims based upon a failure to disclose a calculation of this measure of damages.  Apart from this, however, Plaintiff rests her argument upon the bare fact of her counsel's $150,000 settlement offer.  Plaintiff provides only a transcript of Mr. Carter's deposition as evidence, which contains no indication that Plaintiff disclosed damages calculations or related documents to Defendant beyond what Defendant has provided in its own motion.  Carter simply testified that he believed Plaintiff's counsel had reasonably evaluated the total value of Plaintiff's claim. (*See* Carter Dep. 80–81, Oct. 24, 2013, ECF No. 62-1).

       The Court finds that Plaintiff has not provided evidence that she has produced any damage calculations or related documentation as to consequential or incidental damages, i.e., missed debt payments, etc.  The Court therefore grants summary judgment in part as to that measure of damages.  However, Plaintiff sufficiently disclosed pain and suffering damages, which, because they are not susceptible to a numerical calculation, are not required to be disclosed to the level of precision required for other categories of damages under Rule 26(a).  Plaintiff also argues that it need not disclose a calculation of attorney's fees.  Plaintiff argues that because her fees will potentially be largely based upon pain and suffering damages that cannot be calculated, attorney's fees cannot be calculated either.  The Court rejects this argument.  The percentage basis of fees would provide Defendant a useful basis to better assess the overall value of the lawsuit by multiplying an estimated verdict by a factor of 1.X, where X equals the fraction of the recovery to be paid in fees by Plaintiff.  The Court would normally grant the motion as to

attorney's fees.  However, this would be a drastic solution.  The Court will simply compel Plaintiff to disclose the percentage basis of her fee agreement within seven (7) days if she wishes to pursue this measure of damages at trial.  The previous failure to disclose was not harmless, but it was "substantially justified" in the belief that the information was undiscoverable. *See* Fed. R. Civ. P. 37(c)(1).  The Court hereby settles the privilege issue and rules that information concerning fee agreements is not privileged in Nevada, *see In re Michaelson*, 511 F.2d 882, 893 (9th Cir. 1975) (citing Nev. Rev. Stat. § 49.095), such that the justification for non-disclosure has evaporated.

Defendant also argues that even if attorney's fees are generally available, Plaintiff cannot claim attorney's fees incurred based upon the attorney(s) she initially retained after the accident to prosecute her claims against the tortfeasor and the third-party insurance company, but only those fees she incurred because of Defendant's alleged bad faith, i.e., the fees she incurred in prosecuting the present case.  The Court agrees and grants the motion in this regard.  Plaintiff may not seek fees unrelated to Defendant's alleged bad conduct as a measure of damages in the present case.

Defendant also argues that attorney's fees are not available under section 686A.310. Although the Court does not agree that the recent refusal of the Nevada Legislature to amend the statute to add attorney's fees is relevant to whether the statute already provides for them implicitly—because the Legislature could simply be wrong that attorney's fees are not already implied therein—the Court agrees that availability of attorney's fees cannot be implied from the statute. *See Tracey v. Am. Family Mut. Ins. Co.*, No. 2:09-cv-1257, 2010 WL 5477751, at *4–5 (D. Nev. Dec. 30, 2010) (Navarro, J.).  The Court therefore grants the motion in this regard.

In summary, Plaintiff may not seek consequential or incidental damages at trial, apart from non-economic damages (pain and suffering) and attorney's fees.  Plaintiff may not adduce evidence of attorney's fees unless she provides Defendant her fee basis within seven (7) days

from the entry of this Order into the electronic docket.  Plaintiff may only seek fees caused at least in part by Defendant's conduct, not those caused purely by the non-party tortfeasor's conduct.  Finally, Plaintiff may only seek attorney's fees under the breach of contract and bad faith claims, not under the statutory claim.

### B.     Adverse Inference Motion

Defendant asks the Court to issue an adverse inference instruction to the jury for Plaintiff's counsel's alleged failure to preserve litigation-related voicemails containing offers and requests for additional information.  Defendant argues that evidence of voicemails left for Plaintiff's counsel by Defendant is relevant to the bad faith issue, and that Plaintiff's counsel should have preserved this evidence.  Defendant requests an adverse inference instructing the jury to assume that the voicemails were unfavorable to Plaintiff's case on the issue of Defendant's reasonableness.

The Court denies the motion.  The Court agrees that an attorney—especially one who routinely litigates bad faith cases—should be mindful of his duty to retain evidence of communications to him from an insurer that will surely be relevant to the bad faith issue.  But there is still evidence of the content of the voicemails that can be adduced.  The content of the voicemails would be offered to show that the communications were made, not to prove their truth.  They are therefore not hearsay, and the employee who left the messages may testify directly as to their content.  Alternatively, Defendant may adduce the contents of the claims file as to the contents of the voicemails via a records custodian under the business records exception to the hearsay rule.  If Plaintiff were to impeach the evidence for bias or otherwise, an adverse inference instruction might then be appropriate if direct examination of Plaintiff's counsel by Defendant's counsel as to Plaintiff's counsel's failure to retain the voicemails does not sufficiently cure the prejudice.

///

**CONCLUSION**

IT IS HEREBY ORDERED that the Motions for Summary Judgment (ECF Nos. 50, 53, 54) are DENIED.

IT IS FURTHER ORDERED that the Motion for Summary Judgment (ECF No. 52) is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that the Motion for an Adverse Inference Instruction (ECF No. 51) is DENIED.

IT IS SO ORDERED.

Dated this 24th day of March, 2014.

_____
ROBERT C. JONES
United States District Judge