1

2

3

4                          **UNITED STATES DISTRICT COURT**

5                              **DISTRICT OF NEVADA**

6

7    JUDITH T. SKACH,                        )
                                             )
             Plaintiff,                      )
8                                            )
        vs.                                  )           3:12-cv-00464-RCJ-VPC
9                                            )
     AAA NORTHERN CALIFORNIA, NEVADA &       )              **ORDER**
10   UTAH INSURANCE EXCHANGE,                )
                                             )
11           Defendant.                      )
     _____)

12

13          This is a first-party insurance action arising out of an automobile accident.  Pending

14   before the Court are four motions for summary judgment and a motion for an adverse inference

15   instruction.  The Court previously entered an order denying Motions Nos. 50, 53, and 54,

16   granting Motion No. 52 in part, and denying Motion No. 51.  Defendant has asked the Court to

17   reconsider.  The Court hereby reconsiders in part.  The entry of the order was in error as to

18   Motions Nos. 50, 53, and 54.  That is, a proposed order drafted by a law clerk was inadvertently

19   entered.  The Court, however, had rejected that proposed order and approved the rewritten

20   proposed order embodied herein.  The present motion to reconsider is therefore granted under

21   Rule 60(a).

22   **I.      FACTS AND PROCEDURAL HISTORY**

23          On or about September 16, 2010, Plaintiff Judith Skach was involved in a car accident

24   caused by a non-party who was found to be at fault. (Am. Compl. ¶ 5, Aug. 29, 2012, ECF No. 1,

25   at 6).  Plaintiff sustained permanent injuries; her medical expenses exceed $27,000, and

1  treatment is ongoing. (*Id.*).  The non-party tortfeasor's insurance company tendered the policy

2  limits of $50,000. (*Id.*).  Plaintiff, believing that her eventual expenses would exceed $50,000,

3  tendered a claim for an unspecified amount of Underinsured Motorist ("UIM") benefits to

4  Defendant AAA Northern California, Nevada & Utah Insurance Exchange ("AAA") under a

5  policy she had with AAA. (*See id.* ¶¶ 4–5).  Defendant rejected the claim. (*Id.* ¶ 7).

6        Plaintiff sued Defendant in state court on three causes of action: (1) breach of contract;

7  (2) insurance bad faith; and (3) violations of Chapter 686A of the Nevada Revised Statutes

8  ("NRS") and Chapter 686A of the Nevada Administrative Code ("NAC").  Defendant removed

9  the Amended Complaint ("AC").  The Court denied summary judgment to Defendant as to the

10  bad faith claim but dismissed the claim, with leave to amend.  The Court noted that under

11  Nevada law, Plaintiff would have to prove fault by the tortfeasor in order to recover upon her

12  breach of bad faith claims based upon her UIM policy.  Upon amendment, Defendant moved to

13  dismiss because Plaintiff had not included any claim for declaratory judgment as to the issue of

14  the tortfeasor's fault.  The Court refused to dismiss but noted that Plaintiff would indeed have to

15  prove the tortfeasor's fault as part of the breach and bad faith claims.  Defendant has now filed

16  for motions for summary judgment and a motion for an adverse inference instruction.

17  **II.    LEGAL STANDARDS**

18        **A.    Summary Judgment**

19        A court must grant summary judgment when "the movant shows that there is no genuine

20  dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

21  Civ. P. 56(a).  Material facts are those which may affect the outcome of the case. *See Anderson v.*

22  *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there

23  is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  A

24  principal purpose of summary judgment is "to isolate and dispose of factually unsupported

25  claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  In determining summary

1   judgment, a court uses a burden-shifting scheme:

> When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations and internal quotation marks omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and

determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477

U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are

to be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely

colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### B.    Adverse Inference Instructions

"If a party or a party"s officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims . . . .

Fed. R. Civ. P. 37(b)(2)(A), (A)(1).  Rule 37 thus governs the common law "adverse inference

rule."

## III.    ANALYSIS

### A.    Summary Judgment Motions

### 1.    Motions No. 50, 53, and 54

Defendant asks the Court to grant it summary judgment as against Plaintiff's bad faith

and statutory claims and also as to her prayer for punitive damages.  The motions are largely

redundant, focusing on the argument that a reasonable disagreement over the value of Plaintiff's

claims precludes recovery on the tort claims.  Punitive damages are not available on the breach of

contract claim, but only potentially on the insurance bad faith and Unfair Claims Practices Act

("UCPA") claims. *See* Nev. Rev. Stat. § 42.005(1).  Defendant argues that Plaintiff has produced

no evidence of bad faith or that Defendant "has been guilty of oppression, fraud or malice,

express or implied," as required under the statute. *Id.*

The Court grants the motions.  Plaintiff attaches a transcript of the deposition testimony

of Mr. Thomas Carter, an expert witness as to insurance claims practices who owns Carter,

1   Yarborough Associates. (*See* Carter Dep. 22, Oct. 24, 2013, ECF No. 68-1).  He consults on ten

2   to fifteen bad faith cases per year. (*See id.* 28).  Carter first testified that in cases like the present

3   one, where the at-fault driver was drunk, juries tend to award higher damage amounts, including

4   punitive damages. (*See id.* 14–16).  However, even assuming Mr. Carter's past experience would

5   be relevant and otherwise admissible as to a putative claim by Plaintiff against the tortfeasor in

6   the present case—and it probably wouldn't be—the malicious or oppressive behavior of the

7   tortfeasor in injuring Plaintiff is totally irrelevant to whether the tort victim's insurance company

8   itself acted maliciously or oppressively as to (non)payment of the tort victim's insurance claims.

9   After discussing the fact that the tortfeasor's insurance carrier (State Farm) had indicated to

10  Defendant in this case that there was not likely any UIM exposure, i.e., that the tortfeasor's

11  liability coverage was expected to cover all of Plaintiff's injuries, Carter testified that there was

12  no basis to find that Defendant acted in bad faith based upon its alleged failure to investigate the

13  UIM claim before Plaintiff's counsel made a UIM demand. (*See id.* 42–44).  Carter testified that

14  Plaintiff's counsel never provided Defendant in his demand letter or his follow-up letter with

15  dollar amounts for future medical damages or pain and suffering, except for the total demand of

16  $210,000, but that he demanded an explanation for Defendant's refusal to compensate the total

17  amount. (*See id.* 45–47).  There was no letter from any doctor with estimations of future medical

18  care. (*See id.* 47–48).  He testified that independent medical examinations ("IME") are usually

19  appropriate for an insurer to request even where the fact of harm is not disputed, because an IME

20  is helpful in calculating the expected cost of future medical harms, but that in some cases a

21  demand for an IME could indicate foot-dragging by an insurer. (*See id.* 48–50 ("If the injury that

22  they accept has a future component to it then an IME might be useful in determining the extent

23  and/or the cost of that future component.").  He opined that an IME would be appropriate in the

24  present case because of the indication of uncertain future harms. (*See id.* 50–51).  Carter then

25  testified that in his opinion certain questions asked of the doctors by Defendant in the present

1  case indicated bad faith. (*See id.* 51).  In particular, he opined that Defendant's questions to three

2  of Plaintiff's doctors about "malingering" and "gain" by the Plaintiff were "unusual" based upon

3  the 2000–3000 cases he had examined in his career. (*See id.* 51–52).  He indicated that questions

4  concerning malingering would perhaps be appropriate if a doctor had indicated such suspicions

5  in a report that the insurer had read, but that was not the case here. (*See id.* 52).  Carter explained

6  that he viewed bad faith as "a wall built out of bricks." (*See id.* 53).  If there were enough

7  "bricks," there was bad faith, and although he could not definitively say whether there was bad

8  faith in the present case, there was "a brick or two in this case" based upon his expertise. (*See id.*

9  53–54).  Another "brick" was Defendant's characterization of Plaintiff's injuries as "soft tissue"

10  injuries. (*See id.* at 63).

11       This is not enough to preclude summary judgment on the bad faith issue.  Defendant is

12  correct that because non-economic damages have no objective measure, a defendant in most

13  cases cannot be liable for bad faith purely due to failing to pay these alleged damages.  In a case

14  where it should be clear to an insurer that the covered incident resulted in *some* pain and

15  suffering, an offer of $0 could result in a finding of bad faith.  But Defendant notes that Plaintiff

16  had already received over $32,000 for her pain and suffering when Defendant refused to pay

17  more, and that this amount, although a jury might eventually award more under the breach of

18  contract claim, is not so low as to implicate a bad faith claim.

19       As to Defendant's argument that Plaintiff must prove the fault of the tortfeasor to

20  maintain a bad faith claim against Defendant, the Court has already adjudicated this issue in

21  Defendant's favor.

22       As to the UCPA claim, there are also no material issues of fact concerning whether

23  Defendant failed to effectuate a prompt and equitable settlement of future medical and pain and

24  suffering damages after it became reasonably clear that some amount was due in this regard.

25  ///

1        **2.      Motion No. 52**

2        Defendant seeks summary judgment against any claims for damages beyond the policy

3    limits for medical care, i.e., consequential or incidental damages, non-economic damages, and

4    fees and costs.  Defendant bases the motion upon Plaintiff's alleged failure to provide any such

5    computations of damages as required by Rule 26.  As Defendant notes, the rule requires an

6    automatic initial disclosure of, *inter alia*:

7            a computation of each category of damages claimed by the disclosing party—who
             must also make available for inspection and copying as under Rule 34 the documents
8            or other evidentiary material, unless privileged or protected from disclosure, on
             which each computation is based, including materials bearing on the nature and
9            extent of injuries suffered.

10   Rule 26(a)(1)(A)(iii).  Such disclosures must be supplemented if the initial disclosure becomes or

11   is discovered to have been "incomplete or incorrect" and if the corrective information has not

12   been otherwise provided to the other parties during discovery. Fed. R. Civ. P. 26(e)(1)(A).

13       Defendant argues that Plaintiff has never disclosed any computation of attorney's fees,

14   costs, or any other consequential damages resulting from Defendant's allege bad faith.

15   Defendant attaches a copy of Plaintiff's responses to Defendant's Requests for Production

16   ("RFP"). (*See* Resp. to RFP, Feb. 5, 2013, ECF No. 52-2).  The third RFP asked for "documents

17   evidencing all costs allegedly incurred as a result of the incident . . . including . . . receipts, bills,

18   invoices or other evidence . . . ." (*See id.* 2).  Plaintiff responded that she did not know or recall

19   each and every expense and "does not know what future costs or expenditures she may incur."

20   (*See id.*).  However, Plaintiff alleged to have previously provided such information and promised

21   to supplement that information. (*See id.*).  The demand letter from Plaintiff's attorney to

22   Defendant, also attached, and which is presumably the prior disclosure to which Plaintiff referred

23   in her answer to the third RFP, provides a calculation of past medical expenses ($27,406.50) and

24   past lost wages ($1056), as well as a settlement offer of $150,000 unaccompanied by any other

25   calculations. (*See* Demand Letter, May 4, 2012, ECF No. 52-3).  Plaintiff's response to

1   Defendant's second set of interrogatories includes no further calculations. (*See* Resp., Nov. 15,

2   2013, ECF No. 52-4).  Plaintiff was herself unable to explain the basis for the demand of

3   $150,000 or that she had any consequential damages resulting from Defendant's failure to pay

4   $150,000. (*See* Skach Dep. 169–72, Dec. 14, 2012, ECF No. 52-1).

5        Plaintiff's response is mostly unresponsive to the Rule 26(a) issue, consisting mainly of a

6   reiteration of the response to the previous motion, focusing on the *Wilson* case.  On page ten of

7   the response, Plaintiff correctly notes that non-economic damages are not susceptible to precise

8   damages calculations under Rule 26(a).  This fact cuts both ways: (1) it protects defendants from

9   bad faith claims predicated upon a failure to pay non-economic damages under a policy so long

10  as some non-negligible amount is paid in cases where some non-economic damages are apparent,

11  *see supra*; and (2) it protects plaintiffs from Rule 26(a) claims based upon a failure to disclose a

12  calculation of this measure of damages.  Apart from this, however, Plaintiff rests her argument

13  upon the bare fact of her counsel's $150,000 settlement offer.  Plaintiff provides only a transcript

14  of Mr. Carter's deposition as evidence, which contains no indication that Plaintiff disclosed

15  damages calculations or related documents to Defendant beyond what Defendant has provided in

16  its own motion.  Carter simply testified that he believed Plaintiff's counsel had reasonably

17  evaluated the total value of Plaintiff's claim. (*See* Carter Dep. 80–81, Oct. 24, 2013, ECF No. 62-

18  1).

19       The Court finds that Plaintiff has not provided evidence that she has produced any

20  damage calculations or related documentation as to consequential or incidental damages, i.e.,

21  missed debt payments, etc.  The Court therefore grants summary judgment in part as to that

22  measure of damages.  However, Plaintiff sufficiently disclosed pain and suffering damages,

23  which, because they are not susceptible to a numerical calculation, are not required to be

24  disclosed to the level of precision required for other categories of damages under Rule 26(a).

25       Plaintiff also argues that she need not have disclosed a calculation of attorney's fees.

Plaintiff argues that because her fees will be largely based upon pain and suffering damages that cannot be calculated, attorney's fees cannot be calculated either.  The Court rejects this argument. The percentage basis of fees would provide Defendant a useful basis to better assess the overall value of the lawsuit by multiplying an estimated verdict by a factor of 1.X, where X equals the fraction of the recovery to be paid in fees by Plaintiff.  Defendant also argues that even if attorney's fees are generally available, Plaintiff cannot claim attorney's fees incurred based upon the attorney(s) she initially retained after the accident to prosecute her claims against the tortfeasor and the third-party insurance company, but only those fees she incurred because of Defendant's alleged bad faith, i.e., the fees she incurred in prosecuting the present case.  The Court agrees and grants the motion in this regard.  Plaintiff cannot seek fees unrelated to Defendant's alleged bad conduct as a measure of damages in the present case.  And because the Court grants the summary judgment motion as to the bad faith claim, it grants the motion as to attorney's fees based thereupon.  Although the Court rules that Plaintiff cannot seek fees as a measure of damages, the Court makes no ruling as to whether Plaintiff can obtain fees qua fees under the contract if she prevails at trial.

Defendant also argues that attorney's fees are not available under section 686A.310. Although the Court does not agree that the recent refusal of the Nevada Legislature to amend the statute to add attorney's fees is relevant to whether the statute already provides for them implicitly—because the Legislature could simply be wrong that attorney's fees are not already implied therein—the Court agrees that availability of attorney's fees cannot be implied from the statute. *See Tracey v. Am. Family Mut. Ins. Co.*, No. 2:09-cv-1257, 2010 WL 5477751, at *4–5 (D. Nev. Dec. 30, 2010) (Navarro, J.).  The Court therefore grants the motion in this regard, even if the underlying cause of action survived, which it does not.

### B.    Adverse Inference Motion

Defendant asks the Court to issue an adverse inference instruction to the jury for

1   Plaintiff's counsel's alleged failure to preserve litigation-related voicemails containing offers and

2   requests for additional information.  Defendant argues that evidence of voicemails left for

3   Plaintiff's counsel by Defendant is relevant to the bad faith issue, and that Plaintiff's counsel

4   should have preserved this evidence.  Defendant requests an adverse inference instructing the

5   jury to assume that the voicemails were unfavorable to Plaintiff's case on the issue of

6   Defendant's reasonableness.

7          The Court denies the motion, without prejudice.  The Court agrees that an

8   attorney—especially one who routinely litigates bad faith cases—should be mindful of his duty

9   to retain evidence of communications to him from an insurer that will surely be relevant to the

10  bad faith issue.  But there is still potentially evidence of the content of the voicemails that can be

11  adduced.  The content of the voicemails would be offered to show that the communications were

12  made, not to prove their truth.  They are therefore not hearsay, and the employee who left the

13  messages may testify directly as to their content.  Alternatively, Defendant may adduce the

14  contents of the claims file as to the contents of the voicemails via a records custodian under the

15  business records exception to the hearsay rule.  If Plaintiff were to impeach the evidence for bias

16  or otherwise, an adverse inference instruction might then be appropriate if direct examination of

17  Plaintiff's counsel by Defendant's counsel as to Plaintiff's counsel's failure to retain the

18  voicemails does not sufficiently cure the prejudice.

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

1

**CONCLUSION**

2        IT IS HEREBY ORDERED that the Motion to Reconsider (ECF No. 86) is GRANTED,

3   and the Order (ECF No. 83) is VACATED and STRICKEN.

4        IT IS FURTHER ORDERED that the Motions for Summary Judgment (ECF Nos. 50, 53,

5   54) are GRANTED.  Only the breach of contract claim remains for trial.

6        IT IS FURTHER ORDERED that the Motion for Summary Judgment (ECF No. 52) is

7   GRANTED IN PART and DENIED IN PART.  The Court grants the motion as to all issues

8   except the exclusion of damages for pain and suffering.

9        IT IS FURTHER ORDERED that the Motion for an Adverse Inference Instruction (ECF

10  No. 51) is DENIED.

11       IT IS SO ORDERED.

12  Dated this 17th day of October, 2014.

13  _____

14                ROBERT C. JONES
                United States District Judge

15

16

17

18

19

20

21

22

23

24

25